## M'Kinney *against* Rhoads.

Whether a deed of assignment in trust, be within the purview of the act of 1818, or otherwise, a delivery of the instrument is necessary to constitute it a deed, and to protect the property assigned from execution.

It is not essential to the immediate operation of a deed that it be put directly into the hands of the assignee, but it is indispensable to its effect, that the assignor should part with it, by putting it into a course of transmission or delivery.

The deposit of a deed in the post office directed to the assignee, is equally available for that purpose as a delivery of it to a messenger.

ERROR to the common pleas of *Northumberland* county.

This was an action of replevin by Isaac M'Kinney & Sons against Joseph Rhoads, for fifty tons of iron. Each party claimed the property under Nathan Mitchell, the plaintiff, by virtue of the following assignment:

"Know all men by these presents, that I, Nathan Mitchell, of the Borough of Milton, State of Pennsylvania, county of Northumberland, founder, in consideration of my note of 500 dollars, due the 1st June 1834, also one of 700 dollars due the 1st September 1834, to I. M'Kinney & Sons, of the town of Logan, county of Centre, and state aforesaid. I do hereby assign and set over to the said I. M'Kinney & Sons, to their proper use and benefit, all the pig metal, all the castings, and all the old metal, all the iron that is lying about the furnace, supposed to be 50 tons, on conditions that they the said I. M'Kinney & Sons, pay to Bressler & Kinney, of the town of Millhall, county of Centre, state aforesaid, the just sum of 150 dollars, as first payment of a note which they hold against me of 268 dollars and 50 cents. In witness whereof, I have set my hand and seal at Milton, this 7th day of June 1834.

"NATHAN MITCHELL, [L. s.]"

The allegation on the part of the plaintiff was, that this assignment was executed by Mitchell on Saturday the 7th of June 1834, and put into the post office directed to the assignees on the same day; and this was a fact for the determination of the jury.

The defendant claimed the property, by virtue of a judgment and execution against Mitchell, and a sale of the property to him. The judgment was confessed on the 9th of June 1834, before a justice in favour of the defendant Joseph Rhoads, for 1500 dollars; the execution issued the same day and the property was afterwards sold to the defendant. During the trial of the cause much evidence was given on the subject of the manner Rhoads's judgment was obtained, and which tended to impeach the honesty of the transaction. To rebut this, the defendant offered to give evidence of the good char-

acter of Rhoads. This the plaintiff objected to, but the court over-ruled the objection, and sealed a bill of exceptions.

The defendants also offered evidence of the conduct and declarations of Mitchell, at and about the time he made the assignment to the plaintiffs. This was also objected to, but the objection was overruled and the court sealed a bill of exceptions.

The parties respectively propounded several questions to the court on the subject of the validity of their titles to the property; and the answers of the court were substantially in accordance with the opinion of this court, and need not, therefore, be more particularly stated. The jury found a verdict for the defendants.

*Jordan,* for plaintiff in error.
*Greenough* and *Hepburn,* contra.

The opinion of the Court was delivered by

GIBSON, C. J.—The declarations of the assignor during the transaction, were admissible as part of it; but his subsequent declarations, and the evidence of the defendant's character which had not been put in issue, ought clearly to have been excluded.

Whether the assignment were in trust within the purview of the act of 1818, or in satisfaction of particular debts, is a question that ought not to have entered into the cause. In either aspect, delivery of the instrument was necessary to constitute it a deed, and consequently to protect the property from execution. To give it instant operation, did not require it to be put immediately into the hands of the assignee; but it was indispensable to its effect, that the assignor should part *with* it by putting it into a course of transmission to him. The assent of the assignee may be anticipated as it was in Smith *v.* The Bank of Washington, 5 *Serg. & Rawle* 318; but a delivery in fact or in law, to some person or into some place beyond the grantor's control, is indispensable. A deed may be delivered by words without acts, or by acts without words; of which Shelton's Case, *Cro. Eliz.* 7, is a pregnant instance. Leaving, without countermand, a deed read in the presence of the grantee and others, but not taken away, was deemed a delivery in law; and to the same effect is the decision in the case of Miller's Appeal, 3 *Rawle* 312, where the witnesses recognized their signatures, and remembered the transaction but not the fact of actual delivery. There are other cases still more apposite. In Alford and Lea's Case, 3 *Leon.* 110, delivery to a third person was held to be performance of an award to release, though the deed was rejected by the releasee; which it would not have been, if the release would have been inoperative had it been accepted. In Taw's Case, 1 *Dyer* 167, we have the principle carried out. An obligor sealed a bond and gave it to a third person for the obligee, who, at first, rejected it, but afterwards got possession of it and enforced it. Chancellor Kent justly remarks that it is difficult to sustain the law of

[M'Kinney v. Rhoads.]

the last two except on the principle of retrospective relation from subsequent possession; and I entirely concur with him that though such a deed binds the grantor at law, equity disregards it wherever it is voluntary, unknown to the grantee, retained by the grantor, and for a purpose not acted on. But the deposite of a deed in the post office, must be equally available as a delivery of it to a mes-senger, being equally evincive that the grantor had considered it as perfected so far as his action was required. Here the instrument was neither voluntary, retained, nor for a purpose not acted on; and the question respects the point of time when the assignment became operative at law. And this is as far as the common law rules, which regulate the subject of delivery, can bear to be relaxed. No case has carried the doctrine further except Wilt *v.* Franklin; and had the point made there, been want of intermediate delivery instead of want of intermediate assent, it would probably have produced a different result. Delivery is a constituent part of the act of execu-tion—it is in truth the consummation of it—and as sealing alone makes not a deed, it may safely be affirmed, that it cannot divest an estate, it being an initial principle that a deed takes effect but from the delivery of it. Now the facts in Wilt *v.* Franklin, were these. After an adverse verdict on Saturday, the debtor sealed a convey-ance of his whole estate to a trustee who was neither present at, nor informed of, the transaction. The instrument was retained by the debtor or his son-in-law, who advised the measure, till the evening of the following Tuesday, when it was sent by a messen-ger to the trustee and shown to him the next morning. But on the intermediate Monday, judgment had been signed on a verdict, and the personal estate had been seized in execution by another credi-tor; notwithstanding which, the lien of the judgment, as well as that of the execution, was postponed to the title of the trustee, which was carried back to the ostensible period of the date—three days anterior to the period of perfect delivery. But the apparent time of the date is not the criterion. When false or impossible, the actual tradition ascertains the true time of it—with this limita-tion, it would seem, that the date averred be not anterior to the date expressed. *Perkins,* § 145 *et sequent.* It is due to the court to say that no objection was made by counsel on that ground, the stress of the argument having been laid in the supposed want of assent. Delivery seems not to have been thought necessary at all; but it is not too much to assume that had the want of it been made a point, it would have been decisive. There was no pretence of actual delivery till the judgment had fastened itself upon the land, and an execution had been laid on the chattels; and the fiction of relation to the first delivery, so as to give the deed effect from that time, is restricted to cases of necessity, being allowed but to avoid injustice from intervening events, such as the marriage of a *feme sole* grantor—never to overreach an intervening title. The ante-cedent effect in any case, has been doubted; and though the better

v.—2 T

[M'Kinney v. Rhoads.]

opinion seems to be that it is allowable to prevent wrong from acts which the grantee could not restrain, the field of its operation is not to be enlarged by construction. *Perkins*, § 140–1. But there was in fact no pretence of antecedent delivery; for the conveyance was not put into the hands of the messenger till the judgment and the execution had taken effect. That case, therefore, though sound in all that was decided, is not a precedent for the present. Before another jury, the point will be the time when the assignment was deposited in the post office. And this relieves us from a particular consideration of most of the other points. What matters it, for instance, that the paper may have been retained with a view to cover the property, when it would have been inoperative while thus retained, with whatever view?

The jurisdiction of the magistrate is unquestionable. By the act of 1810, it extends to matters made cognizable by its terms, from which are excepted "cases of real contract, where the title to land may come in question;" and the judgment was confessed for the price of a lot. Had defence been made on the ground of failure of consideration, the justice might have been incompetent to try it; but his agency in entering up the judgment on confession, was more ministerial than judicial, and there is nothing in the statute to forbid it.

Judgment reversed, and a *venire facias de novo* awarded.