# The Gettysburg Railroad Co.—McCurdy's Appeal.

1. By the Act of April 11th 1862, the Supreme Court in equity may decree a sale under a corporation mortgage.

2. The act is constitutional, falling within the express terms of art. 1, § 6 of the Constitution.

3. It is no objection that the act was passed after the date of a mortgage, it only provides a new remedy.

4. An act authorized a railroad company having power, &c., under the general railroad law of 1849 to execute a mortgage on their lands, fran-

chises, &c. A mortgage executed to a trustee under the authority of the directors alone was valid.

5. Bonds were issued under the mortgage, sold, interest paid on them, were recognised by a sequestrator, and received dividends of the funds in his hands, &c. This was a ratification of the mortgage.

6. The mortgage was duly executed, acknowledged and recorded, and the corporation treated it as existing; this was sufficient evidence of its delivery, although never in the manual possession of the trustee.

7. A holder of bonds as collateral may press a sale of such mortgage.

May 24th 1870 (at Harrisburg). Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ.

Appeal from Nisi Prius, In Equity: No. 35, to January Term 1869.

This was a bill filed, December 15th 1868, by George Swope, trustee, &c., under a mortgage of the Gettysburg Railroad Company and Caleb S. Maltby, a holder of bonds secured by the mortgage against the Gettysburg Railroad Company, Robert McCurdy, sequestrator of the road, &c., and Matthew Baird and others, judgment-creditors of the company.

The Gettysburg Railroad Company was incorporated, March 24th 1850, to construct a railroad from Gettysburg to York. By a supplement passed the 5th of April 1853, the company were authorized to extend the road to the state line near Middleburg, in Franklin county, and to have the powers, &c., and be subject to the restrictions, &c., of the general railroad law of February 19th 1849. Another supplement was passed February 21st 1856, giving the company power to borrow $200,000, to issue bonds for the same, and to secure them by a mortgage on their lands, road, works, franchises, tolls, &c.; and provided that the mortgage, "when duly executed and recorded," should "be good and valid as a lien on the subject-matter mortgaged to all intents and purposes." On the 23d of May 1857, the railroad company executed a mortgage to George Swope. The mortgage recited that the directors, on the 16th of January 1857, had resolved to execute a mortgage of the road to Swope, in trust to secure bonds issued by the company by virtue of the Act of 1856, payable in twenty years, with interest payable semi-annually, and that the president and treasurer be authorized to execute a mortgage under the seal of the company to secure the bonds, with the stipulation that if default should be made in payment of the interest for one year, the principal should become due, and the trustee might "commence proceedings at law by scire facias or otherwise, for the recovery of said sum." The mortgage then proceeded in the usual form, conveying the road from Hanover to Middleburg with its franchises, locomotives, cars, lands, tolls, privileges, &c., under the stipulations of the resolution.

The bill set out as above, that the mortgage was recorded in Adams and York counties, was the first lien on the road and

franchises, that the bonds secured were outstanding, that Maltby was the holder of 224 bonds, that interest had been in default for more than a year and the principal was therefore payable, that the company were insolvent, that Baird and certain others (naming them) were judgment-creditors and McCurdy was sequestrator, that Swope had been requested by holders of the bonds to proceed in law or equity, and deems it expedient to proceed in equity.

The prayers were :—

1. That it be decreed that said mortgage is a first lien.   2. That the amount due, principal and interest, of said bonds be ascertained.   3. That said company shall pay at a short date to be named by the court, what shall appear to be due.   4. That in default of payment, a decree directing a sale of the mortgaged premises.   5. General relief.

Robert McCurdy, the sequestrator, demurred, because, 1. The places of abode of the plaintiffs were not set forth in the bill; 2. It does not aver that Maltby is the owner absolutely, or in his own right, of said bonds, or that the same were sold to him by proper authority for a valuable consideration; 3. That this court has not original jurisdiction.

He filed 3 pleas.   1. To the jurisdiction.   2. The recovery of a judgment in 1861 by McCurdy and others for $19,857; the award of sequestration, that the plaintiffs in the judgment should be parties.   3. That the bonds were held as collateral security for notes issued by the company; that they had not been resorted to by the holders of the notes, which remain subject to the pledge.

Mr. Justice Sharswood at Nisi Prius overruled the demurrer and the 1st and 3d pleas; allowed the 2d plea to stand, with liberty to the plaintiffs to amend by introducing as defendants the parties named in the plea.

The sequestrator answered, admitting the issuing of $200,000 of bonds, and that the directors ordered a mortgage to secure them to be executed, and averred that Swope never legally accepted the trust under the mortgage, and that it was never delivered to him, that $112,000 of the bonds with their coupons had, in 1857, 1858 and 1859, been deposited at the rate of 60 per cent. as collateral for loans by the company; that prior to June 4th 1862, but $81,000 of the bonds had been sold, and on that day this defendant had been appointed sequestrator, took possession of the road, and continued to operate it; when appointed there were $65,886 of the company's notes outstanding with $112,000 of bonds as collateral for them; that Maltby became owner of these notes and the bonds as collateral; that the sequestrator filed his sixth account of the surplus earnings, and before the auditor Maltby claimed to participate in the distribution, was allowed to participate, but it was decided that he held the bonds as collateral.   The other defendants averred the indebtedness to them, &c., and most

of them admitted the execution of the mortgage ; none denied it ; they prayed that an account be taken, that Maltby be enjoined from claiming more than his original indebtedness, and that upon payment of his debt he be decreed to deliver the bonds held as collateral.

A replication was filed and an examiner appointed.

On the filing of the examiner's report, Samuel G. Thompson, Esq., was appointed master.

He reported. * * * Thus, so far as the creditors are concerned, the due execution of the mortgage is admitted, and so far as this case is concerned, it cannot be successfully attacked by the sequestrator.　In his answer, he admits the execution of the mortgage and the sale of $85,000 of bonds prior to June 4th 1862, but he denies that it was delivered to the trustee, George Swope.　The evidence shows that the mortgage never was actually in the possession of Mr. Swope.　The supplement of 1852 authorizing it, provides that when executed and recorded, it shall be a good and valid lien.　The mortgage was duly executed under the corporate seal of the company, on the 23d May 1867, and on the same day Robert McCurdy makes affidavit that the same was signed, sealed and delivered as the act and deed of the Gettysburg Railroad Company.　The mortgage was recorded in the counties of Adams and York, and the recording fee in one of the counties was paid by McCurdy.　After this was done, the company issued and sold its bonds, and it is too late for either the company or the sequestrator to deny its validity.　The master, therefore, is of opinion that the mortgage dated May 23d 1857 to George Swope, trustee, is a first lien upon the premises mortgaged, and the holder's bonds secured by it, are entitled to the benefit of all the rights and securities thereby given.

" It was argued that C. S. Maltby held his bonds as collaterals, and no decree could be made until an account be stated, and the amount due him ascertained.　As to the fact whether C. S. Maltby purchased these bonds and held them simply as collateral, the testimony seems to point to the conclusion that he became the absolute purchaser.

" But even if he holds them as collateral he is entitled to a decree.　A bond or chose which is transferred as collateral security, is put under the dominion of the creditor to make his claim out of it, and it is not in the nature of or subject to the incidents of a pawn or pledge : Muirhead v. Kirkpatrick, 9 Harris 241.　In the present case Judge Sharswood, on the demurrer, said in his opinion : ' But admitting that Maltby is not the holder absolutely or in his own right, that forms no objection to proceeding by the trustee in the mortgage even as far as he is concerned, not to speak of the other bondholders.'

" In regard to interest on over-due coupons, in the case of Beaver *v.* Armstrong, 8 Wright 63, it was held that interest was payable on them, and that where a company was insolvent no demand need be made."

The master reported that a decree (of which he annexed a form) should be made. 1. Declaring the mortgage a first lien on the road franchises, &c. 2. That the principal of $200,000 has become due and that the coupons attached to the bonds, except what has been paid by the sequestrator, are unpaid. 3. That the company pay to Swope within      days, the principal and unpaid coupons with interest. 4. That in default of payment, the mortgaged property be exposed to public sale, upon notice in newspapers named, for at least      weeks, $10,000 to be paid when the property is struck down, and the balance within      days thereafter; "provided, &c." He added another clause to the form not necessary to particularize.

" In case the latter part of the decree be not made, then the master submits in lieu of it:

" That the amount of the purchase-money received by the said George Swope on the sale of said premises shall, after deducting all commissions, counsel fees, costs, and expenses incurred by the complainants in this proceeding, be paid into court, to be distributed under such order of reference as may hereafter be made in respect thereto; and the said George Swope has leave to apply from time to time, as he may be advised, for the further direction of the court in carrying out this decree.

" And it is further ordered that the costs of this suit be paid by the Gettysburg Railroad Company."

Exceptions were filed with the master and they were overruled by him.

They were as follows:—

The master erred: 1. In deciding that the mortgage described in the complainants' bill is a valid and subsisting lien on the property and franchises of the Gettysburg Railroad Company.

2. In reporting a-decree in favor of complainants.

3. In reporting the terms of payment of the purchase-money.

4. In deciding that Caleb S. Maltby is a bonâ fide owner of $112,000 of the bonds of the Gettysburg Railroad Company, and that the same are not held by him as collateral security.

5. In not ascertaining the amount of the indebtedness of the Gettysburg Railroad Company upon the bonds of the company and stating a specific account thereof.

The report was filed, accompanied by the exceptions, was confirmed and a decree made accordingly.

McCurdy, as sequestrator, and with other judgment-creditors, appealed.

They assigned for error the overruling of the demurrer and

plea to the original jurisdiction of the court, and also dismissing their several exceptions to the master's report.

*D. Wills*, for appellants.—On the question of jurisdiction he referred to Const. of Penna., art. 5, § 6; Act of April 11th 1862, Pamph. L. 477, Purd. 1275, pl. 2. The mortgage being dated before the act, it does not apply: Mullock *v.* Souder, 5 W. & S. 198; Dwarris on Stat. 681; Fisher *v.* Farley, 11 Harris 501; Becker's Appeal, 3 Casey 52. The bonds and mortgage were under the authority of the directors without the assent of the stockholders, and the act of the directors was in violation of art. 1, § 26, of Const., and *ultra vires*. The mortgage would be an annihilation of the franchises: Burgate *v.* Shortridge, 5 House of Lords Cases 318. The right for the directors to mortgage should be clearly expressed in the charter: Knapp *v.* Rutland & Wash. Railway, 2 Redf. on Railways 553. Neither possession nor acknowledgment and recording dispensed with proof of delivery: Sheppard's Touchstone 57, 58; Kent's Com. 455; Greenl. Ev., § 297; Chess *v.* Chess, 1 Penna. R. 32; Blight *v.* Schenck, 10 Barr 285; Critchfield *v.* Critchfield, 12 Harris 100. He referred to the Act relating to sequestration, June 16th 1836, Pamph. L. 775, § 74, Purd. 200, pl. 46; Act relating to insolvents, June 16th 1836, § 34, Pamph. L. 737, Purd. 542, pl. 42; Moncure *v. v.* Hanson, 3 Harris 385; Bevans *v.* The Turnpike, 10 Barr 174; Suydam *v.* Northwestern Ins. Co., 1 P. F. Smith 394.

*H. M. North*, for defendant in error, referred to act of incorporation and supplements. The act refers to mortgages made before its passage: McElrath *v.* Pittsburg and Steub. Railroad, 5 P. F. Smith 189. A power to sell includes a power to mortgage: Lancaster *v.* Dolan, 1 Rawle 231. Directors can encumber a franchise: Gordon *v.* Preston, 1 Watts 385. If the corporation does not question the mortgage, no one else can: Curtis *v.* Seavill, 15 New York R. 47. A sequestrator cannot: Moncure *v.* Hanson, 3 Harris 385; Suydam *v.* Ins. Co., 1 P. F. Smith 394. A formal acceptance of the mortgage by the trustee was not necessary; Fell *v.* McHenry, 6 Wright 41. Maltby was owner of the bonds: County of Beaver *v.* Armstrong, 8 Wright 63.

The opinion of the court was delivered, July 7th 1870, by

AGNEW, J.—The objection that the Supreme Court has not original jurisdiction in this case is unfounded. The Act of 11th April 1862, Pamph. L. 477, declares that this court "shall have and exercise all the powers and jurisdiction of a court of chancery in all cases of mortgages given by corporations." This power has been so often exercised in the sale of railroads, and interests of so much magnitude hang upon our decrees, the public

would be surprised to learn that this act is unconstitutional. It falls, however, within the express terms of the 6th section of the 5th article of the state Constitution, authorizing the legislature to "vest in the said courts (Supreme and Common Pleas) such other powers to grant relief in equity as shall be found necessary; and from time to time to enlarge or diminish their powers or vest them in other courts, as they shall judge proper for the due administration of justice." It belongs to the legislature to determine the necessity for enlarging our equity jurisdiction, and it does not lie with us, because a party may have a remedy at law in some shape, to say that the legislature cannot give him another, by means of a chancery proceeding. The legal remedy may be very inadequate, as it has been found to be in relation to corporation mortgages, involving the right of way and the franchises of railroad and similar corporations. It is no objection that the Act of 1862 was passed after the date of the mortgage. It interferes with no vested right and injures no one. It merely provides a new and a better remedy for the default of the company, more pliable, and adapted to protect the interests of all the parties: McElrath v. Pittsburg & Steubenville Railroad Co., 5 P. F. Smith 189, was a strong case by reason of the remedy provided in the mortgage itself, and yet we held the Act of 1862 applicable to that case.

The 2d error is also unfounded. The Act of the 21st of February 1856, Pamph. L. 84, merely conferred an additional authority on the directors to mortgage the *franchises* of the road. Under the charter and the General Railroad Act of 1849, the corporation had power to borrow money and *pledge* all its property, *rights* and *privileges* for the payment. The substance of the thing, therefore, existed before. The mortgage in this case was executed on the 23d day of May 1857, and recorded on the same day. Bonds were issued under it, negotiated, interest paid on them, recognised by the sequestrator, and by auditors appointed to distribute funds in the sequestrator's hands; and in almost every way the mortgage has been recognised as a valid and binding instrument down to the time of the application to make the sale under it. Under these circumstances there has been a clear recognition, by way of ratification at least, of the power conferred in the Act of 1856: Angell & Ames on Corporations, 2d ed., 51 to 55; Gordon v. Preston, 1 Watts 387; Fell v. McHenry, 6 Wright 41.

There can be no doubt of the lien of the mortgage. It was duly executed, acknowledged and recorded, and the corporation acted upon its valid existence, as did others receiving bonds under it. The fact, therefore, that Swope, the mere trustee, had not manual possession of the paper does not invalidate it, or detract from its delivery in law. The evidence of such delivery is

ample to carry the benefit of the trust to those for whose use the mortgage was intended: Miller's Estate, 3 Rawle 317; Blight v. Schenck, 10 Barr 285; Stinger v. Commonwealth, 2 Casey 428; McKinney v. Rhoades, 5 Watts 343; Critchfield v. Critchfield, 12 Harris 100.

The master finds that Maltby is the absolute owner of the $112,000 of the bonds which had been hypothecated to secure debts of the company. The sale was made under a resolution of the company passed and carried into effect while McCurdy, the sequestrator, was a director. There seems to be some evidence of his assent to the sale. But whether this be so or not need not be decided; for Maltby, if a holder of the bonds, even as a collateral security only, would be entitled to press for a sale under the mortgage to make his security available.

Finding no error in the decree of the Court of Nisi Prius, it is affirmed, and it is ordered, that a decree be entered in the form drawn up by the master, filling the blanks, as follows: third section "thirty" days; fourth section, first blank, "four;" second blank, "thirty." And omitting from the fourth section all that part beginning with the word "provided," and ending with the words "dividends payable thereon," and inserting in lieu thereof the alternative part reported by the master; and the costs of this appeal are ordered to be paid by the appellant.