## ROBERTS *v.* HILL.

(*Circuit Court, D. Vermont.* March 27, 1885.)

1.. NATIONAL BANKS—PLEDGE TO SECURE DEPOSITOR—ACT OF INSOLVENCY.

If the officers of a national bank, at the time of pledging a note to secure a depositor who had been allowing the bank to use his money and who was apprehensive of a loss thereof, saw that the bank was approaching failure and made the pledge to keep the note out of the assets to be distributed, such pledge would be void; but if they made it to prevent failure, and expecting to prevent failure, by retaining and using the deposit to pay other depositors, it would be good.

2. SAME—PLEDGE HELD GOOD.

On examination of the circumstances of this case, *held*, that the pledge should be sustained.

In Equity.

*Roberts & Roberts,* for orator.

*Jed P. Ladd* and *Henry C. Adams,* for defendant.

WHEELER, J. The orator is receiver of the First National Bank of St. Albans; the defendant is administrator of the estate of D. R. McGregor. The bill is brought to set aside a pledge of a promissory note of $8,031.35, made by the officers of the bank to the defendant's intestate on the twentieth day of February, 1884, to secure a deposit of $8,850. The right to have the pledge set aside and recover the note or its proceeds depends entirely upon section 5242, Rev. St. There is no question about the validity of the deposit, nor but that the pledge would be good to secure it at common law. The statute makes utterly null and void all transfers of the securities and payments of the money of the bank made after an act of insolvency, or in contemplation thereof, with a view to prevent the application of the assets in the manner prescribed in that chapter, or with a view to the preference of one creditor to another, except payment of the circulating notes. What would be an act of insolvency is not defined, but would apparently be the failure to redeem the circulating notes according to section 5226, as that is the only thing which would authorize the comptroller of the currency, before the act of 1875, (19 St. at Large, 63,) to take possession of a national bank and appoint a receiver. This bank had not committed such an act of insolvency, but, beyond any fair question, was, in fact, insolvent at the time of the pledge.

The contemplation mentioned in the statute appears to be that of insolvency itself, and not of that particular act of insolvency in not redeeming the circulation. *Case* v. *Citizens' Bank,* 2 Woods, 23. Here was insolvency, in fact, to be contemplated, sufficient to avoid the pledge, if actually made in contemplation of it with a view to prevent the distribution of the assets ratably by a receiver, or to the preference of one creditor to another. The contemplation and view are to be those of the officers of the bank, and not of the creditor. If these

motives existed and were operative with them, no innocence or good faith on his part would save the transaction. *Case* v. *Citizens' Bank*, *supra*. When the insolvency became permanent, the view to prevent ratable distribution, or to make preferences, would, if it developed into actual existence, remain constant, and vitiate, not only all transfers of securities, but all payments of money to depositors, and to any creditors, except of the circulation. The intention of this section would seem to be to prevent the disposition of any of the money or assets to common creditors whenever the insolvency should become so apparent as to make a receivership, or an ultimate loss to some of the creditors, probable to the just apprehension of the officers, and to hold all for the benefit of all. If this apprehension adequately existed in the minds of the officers of this bank at the time of this pledge, not only this pledge but all subsequent pledges of collaterals to and payments of prior existing debts would be void. It would be manifestly unjust to make an innocent receiver of security or payment give up his, and allow others who could be no more innocent to retain theirs, received when the fate of the institution was more and more imminent.

The defendant's intestate is not shown, and does not appear to have been any relative, favorite, or friend of any officer of, or person connected with, the bank. He was a mere depositor, at a low rate of interest, for the mutual advantage of himself and the bank. There was a run on the bank by depositors, which alarmed him. He did not want his money, but wanted to be secure. The officers guarantied his deposit personally, and turned out this note to pacify him. He was dealt with as any other creditor equally importunate would have been. There was no intent to favor him over others; their motive was to retain the money. Had he received the money he would have been equally liable to refund that, under this statute, as has been shown. By mustering available assets and raising money, and a like use of securities with other depositors, they met the run for a time, by paying those who would be paid, securing those who would be paid or secured, and restoring confidence to the rest. They were striving to save the bank, and not striving to help him at the expense of the others.

The bank continued business about six weeks after this pledge. Then the officers saw that the effort to maintain it was hopeless, and stopped business. Their apprehension of the condition of the bank, and motive to prevent suitable distribution of the assets, ought to be made to appear clearly in order to justify going back so far as to the time of this pledge, and opening all pledges and payments on past debts; and their purposes and acts are to be considered in view of what they could see looking forward, and not wholly by what is apparent now looking backward. If they saw at the time of the pledge that the bank was approaching failure, and made the pledge to keep the note out of the assets to be distributed, the pledge would be clearly

void; but if they made it to prevent failure and expecting to prevent failure, it would appear to be good. The insolvency had come gradually, and not by any sudden loss which would arrest attention at once. The actual condition was as good as it had been for some time. They must have known that it was perilous, but do not appear to have lost courage, or then to have expected failure. The evidence does not satisfactorily show that they were placing money and securities where they would be kept from the effect of failure, but rather does show that at that time they were using their assets to prevent failure. Therefore, it is not found that this note was pledged with a view to prevent its application in the manner prescribed by that chapter, nor with a view to a preference of this creditor to any other.

Let there be a decree dismissing the bill of complaint, with costs.