## HAYDEN v. CHEMICAL NAT. BANK OF NEW YORK.

(Circuit Court of Appeals, Second Circuit. January 25, 1898.)

No. 48.

1. NATIONAL BANKS—INSOLVENCY—PAYMENTS.
　　Rev. St. § 5242, declaring void payments made by a national bank after the commission of an act of bankruptcy, or in contemplation thereof, with a view to prevent the lawful application of its assets, means an act of bankruptcy or insolvency in the legal sense of a failure to pay current obligations in the ordinary course, and does not invalidate payments made in the usual course of business before commission of any such act, and not in contemplation thereof, though the bank, if wound up at the time, would in fact be unable to meet all its obligations.

2. SAME—REMITTANCES—WHEN TITLE PASSES.
　　When a national bank indebted to another bank makes remittances to it by mail in the ordinary course of business, title thereto passes when the letter is placed in the mails; so that, if made in good faith, not after an act of insolvency, or in contemplation thereof, and innocently received by the creditor, the latter may apply them to cancel the indebtedness, though the remitting bank in fact fails before they are received.

Appeal from the Circut Court of the United States for the Southern District of New York.

This was a suit in equity by Kent K. Hayden, as receiver of the Capital National Bank of Lincoln, Neb., against the Chemical National Bank of New York, to recover payments alleged to have been made by the former to the latter in contemplation of insolvency. The circuit court, after a hearing on the merits, dismissed the bill (80 Fed. 587), and the complainant has appealed.

Edw. W. Paige, for appellant.

George H. Yeaman, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The Capital National Bank of Lincoln, Neb., at the close of business hours, January 22, 1893, stopped business, and the next morning, before the bank opened, an officer under the comptroller of the currency, because of its insolvency, took control of its affairs, and possession of its assets. ˙ Its obligations·had considerably exceeded its resources since July, 1891, and false entries to conceal its real financial condition had been made from time to time upon its books. To what extent its directors were aware of these entries, or of its situation, does not appear; but until January 22d, and throughout that day, it met all its obligations, and carried on its business as usual. On the 18th day of January, 1893, it was indebted to the amount of $84,486 to the Chemical National Bank, with which bank it had kept an account at New York City, upon overdrafts in excess of its deposits and remittances. On that day, at St. Joseph,

Mo., the Schuster-Hax National Bank remitted by mail a draft for $2,000 to the Chemical Bank for the credit of the Capital Bank. January 19th, at South Omaha, Neb., the Packers' National Bank remitted by mail a draft for $5,000 to the Chemical Bank for the credit of the Capital Bank, and the Capital Bank itself remitted by mail, at Lincoln, $815.29 and $2,935.60, to the Chemical Bank. January 20th the Capital Bank remitted by mail, at Lincoln, $735, to the Chemical Bank, and at some earlier date or on that day it remitted by mail, at Lincoln, to the Chemical Bank, $833.64. The $2,935.60, $815.29, and $735 were remittances of checks on New York banks for collection and deposit. These various remittances, as they were received by the Chemical Bank, viz. January 23d and January 24th, were credited on its books to the Capital Bank, and, with credit items received by the Chemical Bank from other sources applicable to the account, reduced the debit balance against the Capital Bank to $13,317.94.

This action was brought by the receiver of the Capital Bank to recover of the Chemical Bank the remittances thus received by it on and after January 18th. The court below held that the title to the remittances passed to the defendant at the time they were severally mailed to it, and, as they had been transmitted in the usual course of business, before the Capital Bank had committed or contemplated committing any act of insolvency, and were received innocently by the defendant, the defendant was entitled to apply them upon the balance of account owing to it by the Capital Bank.

There is no evidence in the record showing or tending to show that the condition of the Capital Bank had materially changed recently, or that it was in a situation of greater financial stress after January 18th than it was January 1st, or had been previously. So far as appears, its officers expected, down to the time when its doors were closed, that it would go on with its business in the usual way in the future, as it had for the last year. Whether the failure was precipitated by a discovery of the real state of affairs by the bank examiner, or by the directors, and, if so, when the discovery was made, does not appear. There is not the slightest evidence that the defendant was aware of or suspected the real situation. It had at times refused to permit the Capital Bank to increase its overdrafts, but, as late as January 19th and 20th, notwithstanding the state of the accounts, it paid drafts of the Capital Bank.

Treating the remittances as payments, made at the time they were mailed, the case presents the question whether payments made in the ordinary course of business by a national banking association, which is doing business as usual, to a creditor who received them innocently, are void if it turns out that the association at the time had become in such sense insolvent that its debts were greatly in excess of its assets, and its officers knew or should have known the fact, and knew or should have known that probably at no very distant day it would be obliged to suspend. If they are void, creditors of national banks, whether ordinary customers, depositors, or other banks who acquire their drafts, or advance them funds in expectation of remittances, are on a very precarious footing, and cannot safely have any dealings with them.

If such payments are void, it is because of the effect which must be

attributed to section 5242 of the Revised Statutes of the United States. That section declares that all transfers of the securities of a national banking association, and all payments of money "made after the commission of an act of bankruptcy or in contemplation thereof, made with a view of preventing the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be wholly null and void." The section does not invalidate every payment made by a national bank, except of its circulating notes, after it becomes insolvent, or even after its managers become aware of its insolvency. If it had been intended to do so, that intention could have been readily declared in short and plain terms.

Insolvency, in legal definition, does not mean that condition in which a business concern is placed when it finds that upon the settlement and winding up of its affairs it will be unable to pay its debts in full; it means a present inability to pay current obligations as they mature. Thompson v. Thompson, 4 Cush. 127; Vennard v. McConnell, 11 Allen, 555; Wager v. Hall, 16 Wall. 599. An act of insolvency takes place when a business concern or a bank has failed to pay some of its obligations, made an assignment for the benefit of creditors, suspended business, or done any of those things which indicate to creditors that a debtor has become insolvent. A bank or a business concern may be considered to be acting in contemplation of insolvency when, in making some disposition of its assets, it is actuated by its knowledge of its insolvency.

The statute undoubtedly makes a payment void when it is intended on the part of the bank to prefer one creditor to another, or defeat the distribution of its assets in the manner prescribed by law, notwithstanding the creditor receiving it does so with no suspicion of the purpose of the bank in making it. In all the adjudged cases, however, in which this construction has been given to the statute, an act of insolvency preceded or accompanied the transaction, which was set aside. Bank v. Colby, 21 Wall. 609; Case v. Bank, 2 Woods, 23, Fed. Cas. No. 2,489; Roberts v. Hill, 23 Blatchf. 312, 23 Fed. 311; Bank v. Butler, 129 U. S. 223, 9 Sup. Ct. 281.

The Capital Bank had not committed an act of insolvency. Assuming that its managers knew that its liabilities greatly exceeded its resources, and that it would presently be unable to meet its obligations, and have to suspend, there is no evidence that the payments in controversy were influenced by that knowledge. A payment to a depositor, or other creditor, in the usual course of the bank's business as a going concern, and not preparatory in any sense to the anticipated insolvency of the bank, is not, we think, within the condemnation of the statute. An act done by a corporation in the ordinary and usual course of business, uninfluenced by the state of its affairs, cannot be said to have been done in contemplation of insolvency. Dutcher v. Bank, 59 N. Y. 5. See, also, Hayes v. Beardsley, 136 N. Y. 299, 32 N. E. 855; Stone v. Jenison (Mich.) 70 N. W. 149. We are therefore of the opinion that the payments were valid if the remittances belonged to the defendant from the time they were in the course of transmission to it by mail.

It is the custom of banks generally in transmitting commercial paper to their correspondents, whether for collection or as credit items, to send them by mail. The remittances here were mailed by senders who intended that they should be the property of the defendant, and be applied by it as credit items upon the account of the Capital Bank. By mailing a letter, the sender abandons his dominion over it, and places it at the disposal of the person to whom it is addressed. His act unequivocally manifests that purpose. The import of the act is the same when the letter contains a remittance. It is placed at the disposal of the person to whom it is sent, and he is at liberty to appropriate the remittance in any way consistent with the understanding of the parties, express, or implied from their business dealings, existing when the letter was mailed. In Canterberry v. Bank, 64 N. W. 311, the supreme court of Wisconsin decided that a bank which, at its customer's request, mailed its own draft to another bank, to be used for the customer's credit, could not, by intercepting the draft in the mail upon the discovery of the customer's insolvency, defeat the title of the bank to which it was sent. The court declared that the mailing of the letter inclosing the draft was, in legal effect, a delivery of the draft to the bank to which the letter was addressed. In Johnson v. Sharp, 31 Ohio, 611, it was decided that the mailing of an assignment by the assignor named in the instrument to the assignee named therein invested the assignee with title to the property conveyed by the instrument from the time of the deposit in the post office as against subsequent attaching creditors of the assignee. The court said: "By that act the assignor ceased to have control of it, and, having placed it in the mail for the assignee, who, by previous conduct, has consented to accept the trust, the possession of the carrier must be regarded as the possession of the assignee." The same proposition was decided by the supreme court of Pennsylvania in McKinney v. Rhoads, 5 Watts, 343, and by the court of appeals of South Carolina in Dargan v. Richardson, 1 Cheves, 197; Kirkham v. Bank, 2 Cold. 397. See, also, Mitchell v. Byrne, 6 Rich. Law, 171; 1 Daniel, Neg. Inst. § 67.

The mailing of the remittances to the defendant did not of itself and unconditionally entitle the Capital Bank to be credited with their amount. They were not sent at the request of the defendant, and the circumstances are inconsistent with any understanding that they were sent at its risk. The fact that they became its property when mailed does not necessarily imply that it was to account for their value if they were lost, or if nothing was ever realized from them. If a letter miscarries, is abstracted or destroyed, or from any other cause fails to reach its proper destination, the loss of its contents will fall upon the party who has assumed the risk of its transmission. If, by the course of business, or the arrangement between the two banks, the remittances were not to be credited until they were received by the defendant, the risk of loss in transit rested upon the Capital Bank; and, if it did, it does not prove that the remittances were not the property of the defendant when they were deposited in the mail.

For these reasons we conclude that the decree below was right, and it is therefore affirmed, with costs.