ALBERT J. HALL & another *vs.* FIRST NATIONAL BANK
OF CHELSEA.

Suffolk.   December 5, 1898. — March 2, 1899.

Present: FIELD, C. J., HOLMES, MORTON, BARKER, & HAMMOND, JJ.

*Equity — Promissory Note — Agreement — Specific Performance.*

A bill in equity against a bank, alleging a contemporary agreement, not stated to
be in writing, that the bank would renew the plaintiff's promissory notes until
such time as the improvement in the business situation should enable him to
proceed in business without such assistance, cannot be maintained to enjoin the
bank from enforcing payment of the notes by action, or to compel specific per-
formance of the agreement.

BILL IN EQUITY, filed June 15, 1897, in the Superior Court,
by Albert J. Hall and Thomas F. Scanlan, alleging the follow-
ing facts.  On May 9, 1887, the plaintiff Hall was the owner
and in possession of certain real estate in Saugus, which on that
date he mortgaged for $15,000 to one Eben Hutchinson, and
the mortgage was recorded.

The plaintiff Hall was the owner and in possession of certain
other land lying in Saugus, which he also mortgaged to Hutchin-
son for $1,000, the mortgage being dated November 3, 1888, and
recorded ; and also by a second mortgage he mortgaged the same
land on the same day for $500 to Maud Hutchinson, the daughter
of Eben Hutchinson, the mortgage being dated November 3, 1888,
and recorded.   All of these mortgages were given for a valuable
consideration, as therein set forth.

On March 14, 1891, the plaintiff Hall paid Hutchinson the full
amount due upon all of the three mortgages, and received from
Eben Hutchinson and Maud Hutchinson on that day discharges
of the last two mortgages, which discharges were duly recorded
on March 16, 1891 ; and Hutchinson promised to bring or to
send to Hall the discharge of the first mortgage, together with
the three mortgages and the notes thereby secured.

In fact Hutchinson did not deliver to Hall the mortgages, or
either of them, but at some time unknown to Hall assigned the
first two mortgages, and caused the third mortgage to be as-
signed to the defendant bank, or to some person in its behalf,

by deeds of assignment, which were never recorded; and about July 1, 1892, Hutchinson left this country for parts unknown.

On July 8, 1892, the defendant began suit against Hall upon the notes secured by the three mortgages, and without demand or notice to him attached all his real estate, which was practically all of his property, for the sum of $20,000. At that time Hall learned for the first time that the defendant had possession of the notes and mortgages, all of which had at the time of the suit and attachment been paid in full.

In consequence of such attachment, Hall was almost totally ruined. His business as a builder and dealer in real estate was broken up, and he was upon the verge of bankruptcy.

In order to prevent his total ruin, and to save his business and property. Hall was obliged to make the best settlement of the suit that he possibly could with the defendant, and thereupon an agreement was entered into between the defendant and Hall, by the terms of which it was agreed that Hall should give to the defendant his promissory note for the sum of $2,250; that the defendant would assign, or cause to be assigned, to the plaintiff's son, one Frank Hall, the first mortgage; that the possession of all the mortgages and notes should be given up by the defendant to Hall; that the defendant should discount for Hall his own notes or notes of his customers, either with or without collateral security, as might be arranged later, in order to put Hall in funds and to re-establish his business, which had been totally suspended for over four months in consequence of the attachment; and that the defendant would renew the notes and continue the arrangement for the benefit of Hall, to keep him in funds for the purpose of his business until such time as the improvement in the business situation should enable him to proceed in business without such assistance.

In pursuance of this agreement the defendant did discount notes for the plaintiff Hall, and at one time it was arranged that the collateral then in the bank should be taken out and given to the plaintiff Scanlan, who should then indorse the notes of Hall, and that with such indorsement the defendant should discount Hall's further notes, and continue the arrangement until the business situation should so improve as to make further continuance of the contract unnecessary for Hall's accommodation.

From time to time, in carrying out this agreement, Hall had to pay many of the notes given to the defendant, and at the time of bringing this bill there were in the bank but three notes given by Hall, all of which bore the indorsement of the plaintiff Scanlan. The defendant refused to renew either of the notes last mentioned, and brought suit upon the same against Hall and Scanlan, and attached their property in such suits, all of which are now pending.

Scanlan indorsed the notes with the understanding and agreement that they were to be renewed and continued in accordance with the original agreement, as hereinbefore stated. The plaintiffs cannot set up such contract in defence of the actions at law, and the trial of such actions will involve the trial of this issue three times, and the plaintiffs are remediless at law.

The prayer of the bill was that the defendant might be perpetually enjoined from enforcing payment of the notes by such actions, or either of them; that the defendant, pending the determination of the issues raised by this bill, be ordered to continue the actions upon the dockets of the court; that the defendant be ordered specifically to perform and carry out the contract originally made; and for further relief.

The defendant demurred to the bill, assigning various causes of demurrer.

The demurrer was sustained, and the bill dismissed; and the plaintiffs appealed to this court.

*J. F. Simmons*, for the plaintiffs.

*H. L. Whittlesey*, for the defendant.

HOLMES, J. The understanding alleged in the bill, that the bank would renew the plaintiffs' notes until such time as the improvement in the business situation should enable the plaintiffs to proceed in business without such assistance, is an understanding which directly contradicts the promise expressed on the face of the notes. For whereas the promise expressed in the notes is a promise to pay money at the maturity of the instrument, the contemporary understanding cuts it down to a promise to give a new promise to pay. It is not denied, and, on the contrary, rather is implied in the bill, that the agreement to renew was not in writing. *Adams* v. *Wordley*, 1 M & W. 374. *Young* v. *Austen*, L. R. 4 C. P. 553. If so, it could not be

proved in contradiction of any written contract, and especially not in contradiction of a bill or note in an action at law. *Spring v. Lovett*, 11 Pick. 417, 420. *Batchelder v. Queen Ins. Co.* 135 Mass. 449. *Hoare v. Graham*, 3 Camp. 57. *Young v. Austen*, L. R. 4 C. P. 553. *Abrey v. Crux*, L. R. 5 C. P. 37, 44. *Hill v. Gaw*, 4 Penn. St. 493. *Heist v. Hart*, 73 Penn. St. 286, 289.

In *Flight v. Gray*, 3 C. B. (N. S.) 320, there is an intimation that relief might be given in equity upon such a promise, and some American cases treat the repudiation of an oral under-standing, even though entered into with no intent not to perform it, as itself a sufficient fraud. *Rearich v. Swinehart*, 11 Penn. St. 233, 238, 240. *Taylor v. Gilman*, 25 Vt. 411. *Murray v. Dake*, 46 Cal. 644. But this last notion has been denied by this court in cases depending upon somewhat similar principles. *Bourke v. Callanan*, 160 Mass. 195, 197. In *Flight v. Gray*, Willes, J. seems to have doubted, and, where there is no fraud other than that of relying upon the principles of law, we see no satisfactory ground for allowing the engagement in a note to be varied in this way in equity any more than at law, at least on behalf of a plaintiff seeking specific performance of the oral agreement. *Dwight v. Pomeroy*, 17 Mass. 303. *Woollam v. Hearn*, 7 Ves. 211, 219; *S. C.* White & Tudor, L. C. (6th ed.) 508, 513 (and see note, 525). *Omerod v. Hardman*, 5 Ves. 722, 730, 731. Pom. Eq. Jur. § 854, note. See *Goode v. Riley*, 153 Mass. 585, 587; *Quinn v. Roath*, 37 Conn. 16, 30.

Again, it is highly improbable that such an agreement as is alleged can mean to leave the determination of the time when money may be demanded to any one but the holder of the notes. See *Hawkins v. Graham*, 149 Mass. 284. On the face of it, it does not import a legally binding promise, but rather a hopeful encouragement sounding only in prophecy. We cannot discover an actionable contract. Still less one that can be specifically enforced. Every allegation in the bill is too vague and uncertain.

*Bill dismissed.*