## CURTIS v. METCALF et al.

(District Court, D. Rhode Island. July 28, 1919.)

### No. 70.

1. EQUITY ☞87(1)—LIMITATIONS AFFECTING SUIT.

Where it was sought by bill in equity to charge defendants, who had been officers of a national bank which became insolvent, upon legal, instead of upon equitable, grounds of liability for mismanagement, defendants are entitled to the benefit of legal limitation statutes.

2. LIMITATION OF ACTIONS ☞100(11, 12)—FRAUD—DISCOVERY.

While it is true that committing a fraud in a manner that conceals itself precludes the defense of limitations, yet there must be reasonable diligence on part of one seeking to avoid the running of the statute, and means of knowledge are in effect the same thing as knowledge itself.

3. BANKS AND BANKING ☞254—NATIONAL BANKS—DIRECTORS—LIABILITY.

As statements of value are to a considerable extent statements of opinion, the burden is on a receiver of a national bank, seeking to hold directors liable on account of excessive valuations, etc., to show that the excessive valuations were due not to mistake in judgment, but were intentional, and made fraudulently, with knowledge of their falsity, or recklessly, and without knowledge.

4. BANKS AND BANKING ☞260(1)—NATIONAL BANKS—PROHIBITED INVESTMENTS.

Stocks and bonds, in which a national bank is precluded from investing its funds, may properly be taken as security for a loan.

5. BANKS AND BANKING ☞246—DIRECTORS—AUTHORITY OF MINORITY DIRECTORS.

Minority directors of a national bank may protect the institution from illegal acts of the majority directors by stockholders' bill, directors having the same rights under equity rule 27 (198 Fed. xxv, 115 C. C. A. xxv) as other stockholders.

6. LIMITATION OF ACTIONS ☞2(1)—NATIONAL BANKS—ACTIONS AGAINST DIRECTORS.

In action against the directors of a Rhode Island national bank, who were charged with responsibility for mismanagement, the only statute of limitations applicable is that of Gen. Laws R. I. 1909, c. 284, §§ 3, 7, imposing a six-year period of limitation, but declaring that a cause of action, fraudulently concealed, shall not be deemed to accrue until the party entitled to sue shall first discover its existence.

7. LIMITATION OF ACTIONS ☞179(2)—NATIONAL BANK DIRECTORS—BILL.

A bill by the receiver of a Rhode Island national bank, charging directors with responsibility for mismanagement, held, as to those who had ceased to be directors more than 6 years and 6 months before the

filing of the bill, not to state a cause of action, the allegations as to fraud and concealment not showing that the cause of action could not by reasonable diligence have been earlier discovered, and so Gen. Laws R. I. 1909, c. 284, § 3, imposing a six-year limitation, is a bar.

8. BANKS AND BANKING ☞254—NATIONAL BANKS—ACTIONS BY RECEIVER.
    A receiver of a national bank may join in one bill, charging directors with responsibility for mismanagement, charges of statutory negligence and common-law negligence.

In Equity. Action by Rensselaer L. Curtis, receiver of Atlantic National Bank of Providence, R. I., against Edward P. Metcalf and others. On motion to dismiss the bill or strike out. Motions to dismiss of defendants John J. Connly and others sustained; motions of other defendants denied.

Huddy, Emerson & Moulton, of Providence, R. I., for complainant.
Green, Hinckley & Allen, of Providence, R. I., for defendant Smith.
Tillinghast & Lynch, of Providence, R. I., for defendant Boyden.
Waterman & Greenlaw, of Providence, R. I., for defendant Chase.
Fitzgerald & Higgins, of Providence, R. I., for defendant Sullivan.
Gardner, Pirce & Thornley, of Providence, R. I., for defendants Jones, Wellman, Dean, Sherwood, Houlihan, Connly, Harvey, and Whipple.
Murdock & Tillinghast and Percy W. Gardner, all of Providence, R. I., for defendants Dennis and Eddy.
Edward A. Stockwell, of Providence, R. I., for defendant Swanson.
Edwards & Angell, of Providence, R. I., for defendant Fletcher.
Lee, Boss & McCanna, of Providence, R. I., for defendant Tinkham.

BROWN, District Judge. This is a bill in equity against former directors of the Atlantic National Bank of Providence, R. I., charging them with responsibility for mismanagement. The defendants Connly, Smith, and Swanson had ceased to be directors more than seven years and six months before the filing of the bill, and the defendants A. W. Dennis, Fletcher, and Wellman more than six years and six months.

[1] Though the suit is by bill in equity, it seeks to charge the defendants upon legal, as distinguished from equitable, grounds of liability. Therefore the claims of these defendants to the benefit of statutes of limitation by reason of the lapse of time between their retirement from the bank and the date of the bill must be sustained, unless the delay is sufficiently explained, and there appears reason for avoiding the running of the statute.

I have doubted whether the running of the statute was not interrupted by the action of the Comptroller of the Currency in appointing a receiver of the bank under the provisions of Rev. Stats. § 5234 (Comp. St. § 9821), and have submitted the question to counsel; but as counsel for the receiver, upon examination of the authorities, have concurred in the view of the defendants, at the request of all parties I shall assume, for the purposes of this case, that the statute of limitations applies to the receiver as to an ordinary plaintiff, unless the grounds stated in the bill are sufficient to avoid its application.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The receiver relies upon concealment of the cause of action to avoid the statute.

It is alleged that bad loans and investments were carried at their full value on the books of the bank; that by these overvaluations the impairment of the surplus and capital did not appear on the books of the bank, and could not be and were not discovered by the comptroller or the examiners. But the concealment which may avoid the statute is concealment by the defendants respectively. Upon withdrawal from the bank the books of the bank remained as full information as to what was carried as assets. It is not contended that the transactions were concealed, but only their true values, or the lack of values.

[2] While it is true that "committing a fraud in a manner that it concealed itself" precludes the defense of limitations (Exploration Co. v. U. S., 247 U. S. 435, 447, 38 Sup. Ct. 571, 573 [62 L. Ed. 1200]), yet it also is the rule that there must be reasonable diligence, and that the means of knowledge are the same thing in effect as knowledge itself (Wood v. Carpenter, 101 U. S. 135, 143, 25 L. Ed. 807, cited in Kinder v. Scharff, 231 U. S. 517, 34 Sup. Ct. 164, 58 L. Ed. 343; U. S. v. Diamond Coal & Coke Co., 254 Fed. 266, —— C. C. A. ——; Strout v. United Shoe Mchry. Co. [D. C.] 206 Fed. 646, 651; Id. [D. C.] 224 Fed. 1016, on appeal 225 Fed. 1022, 140 C. C. A. 609). The Rhode Island cases (Peck v. Bank of America, 16 R. I. 710, 19 Atl. 369, 7 L. R. A. 826; Reynolds v. Hennessy, 17 R. I. 169, 20 Atl. 307, 23 Atl. 639) do not seem to me inconsistent with these decisions.

[3] It is necessary, of course, to distinguish between excessive valuations due to a mistaken judgment and those not due to mistake in judgment, but which were intentional, and made fraudulently with knowledge of their falsity, or recklessly without knowledge. As statements of value are to a considerable extent statements of opinion, the burden is on the plaintiff to exclude these statements from the field of honest, though mistaken, opinion, and to show them to be so greatly exaggerated that they did not express judgment as to value, but were false statements that there was value when it was well known that there was not. Seven Cases v. U. S., 239 U. S. 510, 36 Sup. Ct. 190, 60 L. Ed. 411, L. R. A. 1916D, 164.

To avoid the statute, the plaintiff must show not only fraud or recklessness equivalent to fraud in the statements of value, but also that the statements were in the nature of continuous misrepresentations.

[4-6] It seems apparent that these statements were such as could not be relied upon as continuous representations.

The credit of a borrower, the value of business paper, the value of securities purchased and held, are in their nature variable from time to time. Many of the credits said to be overvalued are for short terms—four months paper. A director resigning from the bank, and who has approved paper as good for four months, or securities as good for four months, ordinarily cannot be said to represent that they are good beyond that period, or to intend that his approval shall be relied on by subsequent directors in making renewals.

By statute Rev. St. § 5204 (Comp. St. § 9766), debts on which interest is past due and unpaid for six months, unless well secured and in

process of collection, are to be taken as bad debts, and violations of this statute fall under section 5239 (section 9831). The bill and amendments recognize the transient character of the credits by charging that but for the lack of due diligence many of the loans might have been partially recovered. In paragraph 163 of the amendments it is alleged:

"In none of the cases, with the exceptions hereinafter set out, were the later loans made merely as a means of extricating the bank from the situation created by the earlier loans, but, on the contrary, they were made as new extensions of credit."

The bill also charges the making of investments of the assets of the bank in stocks, bonds, and securities of kinds not permitted to national banks. Even if these were overvalued, it does not appear that this would have concealed the nature of the investment, nor that it was of a kind not permitted to national banks.

Paragraphs 27 and 28 of the bill set forth investments in stocks and bonds to an amount exceeding $400,000, with the statement that each was of a kind in which national banking associations are not permitted to invest. It does not appear that a statement of these as assets could conceal the fact that they were of a prohibited kind, even if overvalued.

There are allegations in the bill indicating that some of these stocks and bonds were originally taken as collateral.

The making of prohibited investments and the taking of insufficient security for loans are different matters. Stocks and bonds which were improper investments might be taken as a part of the security for a loan, and an inquiry into their value as security be relevant to the charge that a loan was a bad loan because insufficiently secured. But if, as charged in paragraphs 27 and 28, prohibited investments were made and carried on the books, their unauthorized character would be apparent and unconcealed irrespective of questions of their actual value.

The character of investments of the assets of the bank in respect to their pecuniary value, as we have said, is a matter involving questions of judgment and of opinion. It well may be inferred, from specific transactions alleged in the bill and from the shrinkage in value of many of the book assets, that errors of judgment and incautious management, not amounting to fraudulent or criminal misapplication of funds of the bank, had a large share in bringing about the bank's failure.

A further ground for stopping the running of the statute which the plaintiff asserts is that the bank continued under the control of those officers and directors who had participated in making the bad loans and investments, and for this reason the bank ceased to be independently represented. This contention does not seem to be based upon any direct allegations in the bill, but rather upon the language of decisions in cases where the facts showed a full control by the wrongdoers during the limitation period.

Assuming the truth of the charges of negligence of the directors, who retired from all connection with the bank before the beginning

of the statutory period, can it also be assumed that they had knowledge, or reasonable grounds to believe, that the directors and officers who succeeded them would be faithless in the performance of their duties, and would willfully violate their statutory or common-law duties?

A negligent participation in making bad loans and investments, a careless reliance upon the representations or opinions of officers or other directors as to values, is by no means the same thing as joining in a conspiracy to defraud the bank. While it is true that a party to such a conspiracy, upon withdrawal without disclosing it, may be held to have such knowledge of the probability of its continuance that his failure to disclose amounts to a concealment which stops the running of the statute, this is not the case where one merely participates in acts of conspirators without such knowledge of the conspiracy as makes him a party thereto. Negligent participation in acts of conspirators by one who is not cognizant of nor a party to the conspiracy affords no ground for the application of the rule that concealment stops the running of the statute, unless the negligence is so gross as to amount to fraud of continuous subsequent operation.

The directors who retired more than six or seven years before the filing of the bill left the bank in control of its officers and directors, and thus openly terminated all control over the bank's affairs. Many new directors came on the board who were not participants with them in the loans and other transactions with which these defendants are charged, and who were under continuing obligation as to renewals, and to inform themselves as to the condition of the bank. It appears by the bill that there was afterwards continuous activity by officers and directors in respect to the loans and other matters. Continuous reliance by any one upon the earlier statements of the bank's affairs preceding the withdrawal of these directors would have been extraordinary and not to be expected.

It is well known, however, that the statement of assets is not wholly a statement of fact, but largely an appraisement or estimation of their worth at a particular time.

If directors with whom these defendants were not in collusion remained in control and in possession of full information that these defendants had been negligent, there cannot be said to have been a concealment from those persons charged with the duty of investigation and of suing the retiring directors. This is recognized in the bill, especially in paragraph 37, and in paragraphs 96 and 116 of the amendments, in which liability is charged for negligence in the failure to sue former directors.

Furthermore, the argument assumes, what is not specifically charged in the bill as a fact, that the directors and officers who participated in these acts remained in such control as to exclude any independent representation of the bank. But throughout the period from June, 1906, to April 12, 1913, there were cashiers and assistant cashiers, as well as bookkeepers and other employés, whose duty it was to transact much of the bank's general business, and who, with their records, were available as sources of information to bank examiners, new di-

rectors, officers of the bank, and others. They are not charged as defendants, or to have been in collusion with the defendants.

From the bill it appears that there were always on the board many directors, as well as cashiers and other officers, who are not charged with participation in the matters with which these defendants are charged. No control or influence by either of these respondents over them, nor any conspiracy with them, is alleged in the bill.

Even if, after the defendants resigned, a majority of the old directors remained on the board, it cannot be assumed that they acted as a unit in all subsequent transactions, regardless of the views of the new directors. Furthermore, it was within the power of those directors who were not of that majority to take action in case the majority were acting illegally or against the interests of the corporation. Directors would have no less right than other stockholders under equity rule 27 (198 Fed. xxv, 115 C. C. A. xxv). Delaware & Hudson Co. v. Albany & Susquehanna R. R. Co.; 213 U. S. 435, 29 Sup. Ct. 540, 53 L. Ed. 862; Doctor v. Harrington, 196 U. S. 579, 25 Sup. Ct. 355, 49 L. Ed. 606; Hopkins Fed. Equity Rules Annotated (2d Ed.) pp. 172, 176; Hodges v. New England Screw Co., 1 R. I. 312, 53 Am. Dec. 624; Hazard v Durant, 11 R. I. 195.

If not in collusion with them, concealment by the continuing directors cannot be imputed to those directors who retired more than six years and six months before the filing of the bill.

The only statute of limitations applicable is that of Rhode Island. McClaine v. Rankin, 197 U. S. 154, 25 Sup. Ct. 410, 49 L. Ed. 702, 3 Ann. Cas. 500. General Laws of R. I., c. 284, §§ 3 and 7, pp. 1001, 1002:

"Sec. 3. * * * All actions of the case except for words spoken and for injuries to the person, all actions of debt founded upon any contract without specialty,. * * * shall be commenced and sued within six years next after the cause of action shall accrue, and not after."

"Sec. 7. If any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him the existence of the cause of such action, said cause of action shall be deemed to accrue against the person so liable therefor, at the time when the person entitled to sue thereon shall first discover its existence."

In Bates v. Preble, 151 U. S. 149, 14 Sup. Ct. 277, 38 L. Ed. 106, it was held that if the fraud is not secret in its nature, and such as cannot be readily ascertained, it is necessary to show some positive act of concealment by the defendant to take the case out of the statute; and the mere silence of the defendant, or his failure to inform plaintiff of the cause of action, does not so operate.

In Reynolds v. Hennessy, 17 R. I. 169, 178, 23 Atl. 639, 641, the expression, "active additional fraud has prevented such discovery," is used.

The plaintiff relies also upon reports made by these defendants, or with their knowledge, to the Comptroller of the Currency. The National Bank Act (Act June 3, 1864, c. 106, 13 Stat. 99) required not less than five of these reports during each year, as well as newspaper publication of these reports; and the Comptroller may require special reports in addition. Paragraph 189 of the bill states that in

each of the years 1909, 1910, 1911, and 1912 five of such reports were made, and in 1913 two. This shows that the reports upon which the plaintiff relies to sustain the contention that there was concealment by these defendants were all superseded by many later reports, in the making of which these defendants had no part.

The statements of assets by these defendants or by their authority, whether upon the books of the bank or in reports to the Comptroller, if false by reason of overvaluation, cannot be regarded as continuous representations adapted to conceal the condition of the bank throughout the entire period of the statute of limitations, or until a time within the period of the statute.

As there is no allegation of any act by these directors subsequent to their retirement more than six years and six months before the date of the filing of the bill, or of the exercise by them of any control over the officers or directors in whose hands they left the bank, or who succeeded them, or of any act affecting the independent action of examiners or the Comptroller, the plaintiff's contention that there was concealment by these defendants is not aided by any allegations of the subsequent misconduct of other officers or directors, but must rest upon two grounds: First, that they made fraudulent representations knowing them to be materially false; and, second, that the fraud was in its nature secret.

This does not except from the statute those claims of liability based merely upon negligence not amounting to fraud, or upon violation of the statutes in respect to excessive loans, or the character of investments, etc. Fraud inherent in the transactions, or in the statement of values, and secret and self-concealing, must be established to avoid the statute, in the absence of allegations of active, additional fraud by these defendants, preventing discovery.

Assuming that the general allegations that each director while in office knew of the uncertainty and worthlessness of the items complained of, and that, notwithstanding, the loans and investments were carried at their full value on the books of the bank, are applicable to all items, both to those upon which there was a total loss and to those upon which there was a very substantial recovery, and that this amounts to a charge of actual fraud, I am unable to find any allegations to justify a finding that the fraud was secret or self-concealing in its nature, since the overvaluation must have been discovered very early, in the ordinary course of the business of the bank, by its officers and directors and should have been discovered by examinations by the examiners.

I am therefore of the opinion that as to the above-named defendants all charges of negligence or breach of statutory duty not amounting to fraud are barred by chapter 284, § 3, of the General Laws of Rhode Island; and, if any of the allegations of the bill can be held to be sufficient to charge transactions amounting to actual fraud, that the statute also applies to these, since the bill fails to bring them within the exception stated in section 7 of chapter 284, relating to concealment of the cause of action "fraudulently, by actual misrepresentation."

The remaining defendants were all directors during the period to which the statute of limitations does not apply, and are each charged with breaches of common law and statutory duties during that period, including the failure to take action to recover upon transactions which occurred prior to, as well as within, the period of limitations.

Upon the face of the bill, therefore, the defense of the statute of limitations does not, as in the case of the above-named retiring directors, apply as a complete defense, although it may prove applicable in favor of some of them in respect to earlier items. But, owing to the allegations of negligence and breaches of duty in respect to the earlier items, it seems impossible, in the present state of the case, to apply the statute to any of the transactions with which they are respectively charged.

[7, 8] I am of the opinion that as amended the bill substantially complies with the requirements set forth in my former opinion. So far as that opinion approved the joinder in one bill of charges of statutory negligence and of common-law negligence, it seems to be confirmed by the recent decision of the Supreme Court in Bowerman v. Hamner, 250 U. S. 504, 39 Sup. Ct. 549, 63 L. Ed. —— (June 9, 1919).

The motions to dismiss of the defendants John J. Connly, Edwin A. Smith, Oscar Swanson, Arthur W. Dennis, Henry Fletcher, and D. Henry Wellman will be granted.

The motion of the other defendants to dismiss and to strike out portions of the bill are each and all denied, but without prejudice, by reason of such denial, to the right of the defendants to reargue upon final hearing any points of law or fact going to the merits.

Draft decrees may be presented accordingly.