## LUCAS et al. v. FEDERAL RESERVE BANK OF RICHMOND.

No. 3266.

Circuit Court of Appeals, Fourth Circuit.

June 13, 1932.

R. A. Nunn and R. E. Whitehurst, both of New Bern, N. C. (W. B. R. Guion, of New Bern, N. C., on the brief), for appellants.

Newton D. Baker, of Cleveland, Ohio (M. G. Wallace, of Richmond, Va., and W. H. Lee, of New Bern, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a final decree dismissing a bill of complaint and intervening petitions adopting its allegations. The complainants were stockholders and creditors of the failed National Bank of New Bern and creditors of the failed First National Bank of New Bern, which prior to its failure had taken over the assets and assumed the liabilities of the former. The bill was filed in behalf of complainants and others similarly situated against the Federal Reserve Bank of Richmond; and the National Bank of New Bern and the receiver of the First National Bank of New Bern were made defendants, under an allegation that the suit was instituted to enforce rights of the National Bank transferred to the First National Bank which the receiver of the latter, notwithstanding demand by complainants, had refused to enforce. A motion to dismiss was made on the grounds of misjoinder of parties and causes of action and failure to comply with Equity Rule 27 (28 USCA § 723), as well as upon the ground that the bill was without equity. As we are of opinion that the bill was properly dismissed on the last ground, it is not necessary to consider the others.

The bill, which alleges four causes of action, sets forth the following facts basic as to all of them: In the year 1923 the People's Bank of New Bern was found to be involved, and its assets were taken over, and its liabilities assumed by the National Bank of New Bern, at the instance of the defendant Federal Reserve Bank, whose officers promised to extend to the National Bank "such additional accommodations in the way of discounts as would be necessary to meet the additional burden" thus assumed by it. The National Bank was indebted to the Reserve Bank at the time; and shortly thereafter the latter, notwithstanding its agreement, required the National Bank to put up additional collateral to its indebtedness to an amount equal to 50 per cent. of the face of the paper previously rediscounted. In 1925 additional collateral to an amount equal to 50 per cent. of the loans and advancements was required, with the result that the Reserve Bank held marginal collateral in an amount equal to the value of the paper rediscounted with it, or approximately $208,000. The amount of the rediscounts and the marginal collateral remained approximately the same from 1925, substitutions being made in the paper rediscounted and also in the paper held as collateral. On March 19, 1929, the First National Bank of New Bern was organized and took over the assets and assumed the liabilities of the National Bank. The First National Bank became insolvent and was placed in the hands of a receiver on October 26, 1929.

The requirement by the Reserve Bank that the National Bank deposit with it the $208,000 of additional collateral is the basis of all four of the causes of action contained in the bill. The first proceeds upon the theory that the Reserve Bank had obligated itself to finance the National Bank in consideration of its taking over the assets and assuming the liabilities of the Peoples' Bank, and that the requirement of the deposit of the $208,000 collateral was wrongful because of this obligation. It avers that the Reserve Bank "contrary to its promise and agreement, demanded and pressed for the liquidation of the paper of the National Bank of New Bern * * *; restricted its credit to the National Bank of New Bern and in addition thereto, unlawfully, wrongfully and in violation of its powers and duties, demanded that said National Bank of New Bern should deposit with it additional notes and bills of its customers * * * to be held by it as security for any sums due by reason of rediscounts"; that this requirement was unreasonable and unlawful and deprived the National Bank of the use of these bills and notes; that the Reserve Bank refused to surrender this additional collateral when demand for same was made by the First National Bank, successor of the National Bank; that this refusal resulted in the inability of the First National Bank to meet its obligations, and in its having to close its doors and suspend business; that, as a result of this conduct on the part of the Reserve Bank, complainants and those in like situation have been damaged in the sum of $1,000,000; and that complainants are entitled to recover of the Reserve Bank the damages sustained by them, and to have an accounting of the collateral which the National Bank was wrongfully required to deposit with the Reserve Bank.

The allegations of the second cause of action are that the Reserve Bank, under the statute creating it, is limited in its acceptance

of paper and securities to those of the kind eligible for discount under the act; that the paper which the Reserve Bank required the National Bank to deposit as additional collateral was not of this character; that the requirement was, therefore, unauthorized and unlawful; and that this unauthorized and unlawful conduct produced in the National Bank and in the First National Bank "a condition equivalent to insolvency," and resulted in the closing of the latter with consequent damage to complainants and those in like situation.

The third cause of action proceeds upon the theory that, in requiring the deposit of the collateral security by the National Bank, the Reserve Bank obtained a preference. It alleges that the Reserve Bank, by reason of its access to examination made of member banks, had "a more intimate knowledge" of the condition of the assets of the National Bank and the First National Bank than their own officers; that about the year 1925, the Reserve Bank determined that the National Bank was insolvent and its assets frozen and uncollectible; and that it thereupon caused the collateral security in question to be transferred to it in contemplation of insolvency and with a view of obtaining a preference.

The fourth cause of action alleges that the Reserve Bank required the National Bank and the First National Bank to maintain deposit balances with it in an amount not less than 7 per cent. of demand or 3 per cent. of time deposits, and assessed penalties against them for failure to maintain such balances; that, by reason of the requirement of the Reserve Bank that the additional collateral be deposited with it, they were unable to maintain the required balances, and incurred the penalties assessed against them; and that under these circumstances the penalties were improperly assessed and the Reserve Bank should be required to account for same.

■ It is clear that the first cause of action states no ground of relief either in contract or in tort. The allegation that the Reserve Bank promised to "extend such additional accommodations in the way of discounts as would be necessary to meet the additional burden assumed" sets forth none of the essential terms of a contract. It does not show the amount of credit to be extended, the period of the credit, the amount or kind of security to be deposited as collateral, or the interest to be paid. The court cannot see by reading it any definite agreement which the law could enforce. In the language of Mr.

Justice Holmes, "On the face of it, it does not import a legally binding promise, but rather a hopeful encouragement, sounding only in prophecy." Hall v. First Nat. Bank of Chelsea, 173 Mass. 16, 53 N. E. 154, 155, 44 L. R. A. 319, 73 Am. St. Rep. 255. It is well settled that such a vague promise does not constitute a binding and enforceable contract. American Law Institute Restatement of Law of Contracts, § 32; Williston on Contracts, § 37 et seq.; 6 R. C. L. 644; Jones v. Vance Shoe Co. (C. C. A. 7th) 115 F. 707; Hall v. First Nat. Bank of Chelsea, supra; United Press v. New York Press Co., 164 N. Y. 406, 58 N. E. 527, 53 L. R. A. 288; Brown v. Fahey, 157 Md. 481, 146 A. 264; Ahlstrom v. Fitzpatrick, 17 Mont. 295, 42 P. 757; Yerion v. Allison (Tex. Civ. App.) 242 S. W. 270. But, even if we could read a binding agreement into the vague promise alleged, it does not appear that the Reserve Bank has violated same. It extended to the National Bank and its successor, the First National Bank, a very substantial credit, discounting paper for them over a period of six years; and it is nowhere alleged that the security demanded was other than that required by the dictates of prudence and good banking.

■ And there is no allegation in the first cause of action of any wrongful or oppressive conduct which would support a recovery in tort. It is not alleged that the Reserve Bank made any false or fraudulent representations to the damage of the National Bank or that it violated any right of that bank in any other particular. The use of the adverbs "unlawfully," "wrongfully," and "fraudulently" do not add anything to the pleading. To state a cause of action it must set forth facts from which the court may see that complainants are entitled to relief, not mere conclusions of the pleader. Chamberlain Machine Works v. United States, 270 U. S. 347, 349, 46 S. Ct. 225, 70 L. Ed. 619; Cairo, etc., R. Co. v. United States, 267 U. S. 350, 352, 45 S. Ct. 247, 69 L. Ed. 651; Fogg v. Blair, 139 U. S. 118, 127, 11 S. Ct. 476, 35 L. Ed. 104.

■ As to the second cause of action, it is sufficient to say that, in our opinion, there can be no doubt as to the right and power of the federal reserve banks to take, as collateral security to the indebtedness of member banks, paper which is not eligible for discount. While the Federal Reserve Act limits the class of paper which a reserve bank may discount or purchase (12 USCA §§ 343 and 356), there is no reason why such bank may not accept paper ineligible for discount as ad-

ditional security for the indebtedness arising out of the discount of eligible paper. It is given power by the act (12 USCA § 341, seventh) to exercise, not only the powers expressly granted therein, but also such incidental powers as shall be necessary to carry on·the business of banking within the limitations prescribed; and that the power to require and accept additional security, either for existing indebtedness or for eligible paper discounted, is a power necessary to carry on properly the business of banking within the limitations of the act, seems too clear to admit of argument. The fact that the paper taken as additional security is ineligible for discount, ought not and does not preclude its being taken as collateral. The Federal Reserve Bank is charged with the duty of defining the paper eligible for discount (12 USCA § 343); and in a regulation adopted pursuant thereto it has expressly provided that eligible paper discounted may be secured by paper ineligible for discount. Regulation A, Section II, subdivision (e) provides as to eligible paper: "(e) It may be secured by the pledge of goods or collateral of any nature, including *paper which is ineligible for discount,* provided it (the note, draft or bill of exchange) is otherwise eligible." '(Italics ours.)

When we consider the reason and purpose of the Federal Reserve Act, there would seem to be no doubt that it contemplates that reserve banks shall have the right to accept paper not eligible for discount as additional security for the indebtedness incurred by a member bank when eligible paper is discounted. One of the purposes of the act was to afford assistance to banks in rural sections by providing a means whereby their negotiable paper might be discounted and used as a basis for issuing currency. It was the reserve banks which were to discount this paper; and it was, of course, contemplated that in discounting same they should proceed upon sound banking principles. It is manifest that much of the paper offered for discount by rural banks will be paper of persons with whose financial standing the reserve banks will not be familiar, and that, unless the latter are allowed to require additional security for the obligations incurred when such paper is discounted, they will be unwilling to discount same. To deny them the right to require or accept such additional security, therefore, would unnecessarily restrict them in rendering a service of the greatest importance to the country.

The section of the Federal Reserve Act granting incidental powers to the Federal Reserve Banks is practically the same as the section granting incidental powers to national banking associations (12 USCA § 24, seventh); and, with respect to the incidental powers granted the latter, Mr. Chief Justice Waite, in the case of First Nat. Bank v. National Exchange Bank, 92 U. S. 122, 127, 23 L. Ed. 679, said: "Authority is thus given to transact such a banking business as is specified, and all incidental powers necessary to carry it on are granted. These powers are such as are required to meet all the legitimate demands of the authorized business, and to enable a bank to conduct its affairs, within the general scope of its charter, safely and prudently. This necessarily implies the right of a bank to incur liabilities in the regular course of its business, as well as to become the creditor of others. Its own obligations must be met, and debts due to it collected or secured. The power to adopt reasonable and appropriate measures for these purposes is an incident to the power to incur the liability or become the creditor."

It is well settled that, under these incidental powers, a national banking association may take, as security for a loan, collateral of a character in which it is precluded from investing its funds. Curtis v. Metcalf (D. C.) 259 F. 961; Thompson v. St. Nicholas Nat. Bank, 146 U. S. 240, 13 S. Ct. 66, 36 L. Ed. 956; Germania Nat. Bank v. Case, 99 U. S. 628, 25 L. Ed. 448; Fourth Nat. Bank of Nashville v. Stahlman, 132 Tenn. 367, 178 S. W. 942, L. R. A. 1916A; 568, and note. According to the allegations here, the ineligible paper was demanded and taken as additional security after credit had been extended upon the discount of eligible paper, although it is a fair inference that it was taken at the time when new paper was discounted in substitution of other paper then retired. It was taken, then, in an effort to collect or secure existing indebtedness; and a contention that the power to take such security for the protection of the bank does not exist, is hardly to be accepted in view of the decisions holding that a national bank, for the collection and better security of debts owing to it, may acquire corporate stocks (First Nat. Bank v. Nat. Exchange Bank, supra), may buy grain needed to seed a farm which it has been compelled to purchase on execution (Great Bend First Nat. Bank v. Bannister, 7 Kan. App. 787, 54 P. 20), and, although expressly forbidden to make loans on realty, may take a mortgage on realty as additional security to a loan already made (Norton Grocery Co. v.

People's Nat. Bank of Abingdon, 151 Va. 195, 144 S. E. 501).

Finally, it is clear that, whatever the power of the defendant with respect to taking as collateral paper not eligible for discount, no one can complain of such action except the government, the sovereign which created and limited its powers. Kerfoot v. Farmers' & Merchants' Bank, 218 U. S. 281, 286, 31 S. Ct. 14, 54 L. Ed. 1042; Thompson v. St. Nicholas Nat. Bank, supra, 146 U. S. 240, 251, 13 S. Ct. 66, 36 L. Ed. 956; Union National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188.

Coming to the third cause of action, we think that there are three reasons why its allegations charging preferential transfer cannot be sustained: (1) It is not charged that the officers of the bank knew it to be insolvent or that they made the transfer in contemplation of insolvency; (2) the transfers were made to secure advances and not merely existing loans; and (3) the allegations of the bill amount to no more than the conclusion of the pleader, in that they fail to allege facts from which the court can see that transfers made in 1923 and 1925 were in contemplation of an insolvency which occurred in 1929.

The statute avoids as preferential all transfers, assignments, deposits, and payments of a bank "made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another." R. S. § 5242 (12 USCA § 91). The purpose of the statute was to guard against the wrongful or preferential disposition of the assets of a bank by its officers in contemplation of insolvency; and the knowledge and intent which it requires for avoiding a transfer relate to knowledge and intent on the part of the officers of the bank, who alone have the power to make the transfer. Roberts v. Hill (C. C.) 24 F. 571, 574; Armstrong v. Chemical National Bank (C. C.) 41 F. 234, 237, 6 L. R. A. 226; Hayden v. Chemical National Bank (C. C. A. 2d) 84 F. 874; Browne v. Stronach (D. C.) 7 F.(2d) 685. As said by Judge Wallace in the case of Armstrong v. Chemical Nat. Bank. supra, "A bank is not in contemplation of insolvency until the fact becomes reasonably apparent to its officers that it will presently be unable to meet its obligations, and will be obliged to suspend its ordinary operations." On the other hand, if the officers of the bank make the transfer in contemplation of insolvency with a view of granting a preference, the transferee's knowledge or want of knowledge is immaterial. Ball v. German Bank (C. C. A. 8th) 187 F. 750; National Security Bank v. Butler, 129 U. S. 223, 9 S. Ct. 281, 32 L. Ed. 682; Case v. Citizens' Bank, 2 Woods 23, Fed. Cas. No. 2489. If the officers have no such knowledge or intent, it manifestly cannot be condemned as preferential, whatever may have been the knowledge or intent of the transferee.

While it is alleged that the total of the indebtedness of the National Bank to the Reserve Bank remained around the same figure from 1923 to 1929, the bill makes it clear that the items out of which the indebtedness arose were constantly changing. Those items were notes, drafts, bills of exchange, etc., which the Reserve Bank had discounted and upon which the National Bank had become liable by indorsement. As the various papers matured they were paid off and other papers were discounted; and it is a fair inference from the pleadings that the deposit of additional collateral was required as a condition of these discounts. The result is that the collateral was deposited not to bolster up and secure an existing debt, but to secure additional advancements through additional discounts. The collateral was deposited, therefore, to secure present loans or moneys advanced as the new discounts were made; and it is well settled that a pledge of collateral for this purpose does not constitute a preference. Armstrong v. Chemical Nat. Bank, supra (C. C.) 41 F. 234, 6 L. R. A. 226; Stapylton v. Stockton (C. C. A. 5th) 91 F. 326.

And in view of the fact that the transfers were made in 1923 and 1925, and the bank was not found to be insolvent until 1929, we think that the allegation that the transfers were made in contemplation of insolvency must be treated as a mere conclusion of the pleader. Ordinarily, when insolvency follows hard upon the heels of the transfer, such allegation is sufficient. But this court takes judicial notice of the fact that national banks are examined semiannually under the direction of the comptroller of the currency, and, if found to be insolvent, are placed in liquidation. A contemplation of insolvency for from four to six years appears to us too long a "contemplation" to be received seriously, in the absence of allegation of facts from which the court may see that such contemplation really existed. It is true that the pleadings need state only the ultimate facts; but these must be stated with

such fullness as would justify a court of equity in granting relief. And surely no court would be justified in setting aside as preferential a transfer made four years before insolvency, on a bare allegation that it was made in contemplation of insolvency, and with no explanation as to how it was possible for the bank to continue in business in the meantime. While upon a motion to dismiss, allegations of the bill must be treated as true, they must be sufficiently full to justify the relief asked in the light of facts of which the court takes judicial notice.

Little need be said as to the fourth cause of action. Complaint as to the penalties exacted rests upon the allegation that these were imposed as a result of the wrongful requirement of the additional collateral and consequent diminution of deposit balance kept with the reserve bank. As we have seen, the requirement of additional collateral was not wrongful; and no basis is left for the contention as to the penalties. These were imposed under regulations adopted by the Federal Reserve Board pursuant to section 19 of the Federal Reserve Act (12 USCA §§ 462, 464); and there is no contention that they were improperly imposed or that the regulations were invalid.

The decree dismissing the bill will be affirmed.

Affirmed.