**FEDERAL RESERVE BANK OF ST. LOUIS, a United States Corporation**

v.

**METROCENTRE IMPROVEMENT DISTRICT # 1, CITY OF LITTLE ROCK, ARKANSAS.**

**No. LR–C–77–100.**

United States District Court, E. D. Arkansas, W. D.

June 23, 1980.

W. S. Miller, Jr., Eichenbaum, Scott, Miller, Crockett & Darr, Little Rock, Ark., for plaintiff.

Gus Walton, Wright, Lindsey & Jennings, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

ROY, District Judge.

The City of Little Rock, Arkansas, formed the Metrocentre Improvement District No. 1, a Central Business Improvement District for downtown Little Rock, pursuant to Ark.Stat.Ann. §§ 20–1601–1634 (Repl.1968) and Ordinance 12,869 of the City of Little Rock, adopted October 16, 1973. The Federal Reserve Bank of St. Louis (FRBSL) holds title to Lots 1–10 of Block 94 in Little Rock, all of which is located within the Improvement District. As a result of the formation of this District, the FRBSL was assessed an annual fee of $12,854.00, payable from 1977 through 2002, inclusive. The FRBSL has refused to pay the assessment and filed suit seeking a declaratory judgment that it is exempt from such assessments, for an injunction to restrain the defendant Metrocentre from making further assessments and from instituting any legal action to recover any assessments owed and for an order directing that defendant remove any existing assessments against the FRBSL's property.

Plaintiff contends that, as an agency or instrumentality of the United States government, and because of its exemption from all but real estate taxes granted by 12 U.S.C. § 531, the assessments are invalid because of being, respectively, violative of the Supremacy Clause of the United States Constitution, Art. VI, cl. 2, and because to allow such an assessment would be contrary to the clear intent of Congress.

Defendant contends that the FRBSL is not an agency or instrumentality of the government for the purposes of the assessment and that such assessments are not "taxes" from which the FRBSL is exempt. Defendant also asserts that the FRBSL has not complied with Ark.Stat.Ann. § 20–416 (Repl.1968) which requires that any contest of the validity of an assessment of this type must be made within thirty days of the publication of the ordinance. Plaintiff has admitted that it did not comply with § 20–416, and the record so reflects.

█ Since the immunity of an agency or instrumentality of the federal government can be waived only specifically by Congress, Bd. of Directors of Red River Levee Dist. No. 1 of Lafayette County, Ark. v. Reconstruction Finance Corp., 170 F.2d 430 (8th Cir. 1948), the primary question which this Court must address is whether the FRBSL is an agency or instrumentality of the government.

First, it must be noted that the FRBSL has been anything but consistent on that point. The FRBSL takes whatever position on its status as a governmental agency or instrumentality as appears expedient in a given situation. (Russell deposition, pp. 58, 94, 95, 101). Mr. Lawrence K. Roos, the president and chief executive officer of the FRBSL, stated in his deposition that the FRBSL has taken varying positions on this question depending on the "advantages or disadvantages for us." (Roos deposition, p. 9).

In establishing the Federal Reserve System, Congress provided for a two-part structure: (1) a system of independent regional institutions, owned by commercial banks in the region and locally controlled, i. e., the Reserve Banks; and (2) the Federal Reserve Board, a government-controlled entity to perform the function of a central bank and to provide general supervision over the Reserve Banks. The legislative history of the Federal Reserve Act demonstrates that Congress intended the regional Reserve Banks (such as the FRBSL) to be non-governmental entities, separate and distinct from the United States, owned by the commercial banks in the respective regions and designed to function essentially for private purposes, i. e., to collect checks,

12 U.S.C. §§ 248(o), 342, 360; to discount notes of member banks, 12 U.S.C. §§ 343, 344, 346, 348, 349, 352, 357; to make advances to member banks, 12 U.S.C. §§ 347–347c; to hold reserves for member banks, 12 U.S.C. § 461; and to purchase and sell securities on the open market, 12 U.S.C. §§ 353, 355, 359. .

The legislative history of the Federal Reserve Act, which Act created the Board and the Reserve Banks, clearly indicates that there was to be a distinction between the regional Reserve Banks and the government itself. The House Report on the bill that became the Federal Reserve Act described the intended structure and function of the Reserve Banks as follows:

It [the Committee] recommends that these bankers' banks shall be given a definite capital, to be subscribed and paid by their constituent member banks which hold their shares, and that they shall do business only with the banks aforesaid and with the Government. H.R. Report No. 69, 63d Cong., 1st Sess. 16 (1913) [Hereafter "House Report"] (emphasis supplied).

The primary function of these Reserve Banks, according to the House Report, was to provide services for the commercial banks which own their stock. The Reserve Banks would be regulated by the federal government, as are the national commercial banks, but were not part of the government:

The Federal reserve banks . . . would be in effect cooperative institutions, carried on for the benefit of the community and of the banks themselves by the banks acting as stockholders therein . . . The committee, however, recommends that they shall be individually organized and individually controlled, each holding the fluid funds of the region in which it is organized and each ordinarily dependent upon no other part of the country for assistance. The only factor of centralization which has been provided in the committee's plan is found in the Federal reserve board, which is to be a strictly Government organization created for the purpose of inspecting existing banking institutions and of regulating relationships between them and the Government itself. House Report 17–18 (emphasis supplied).

The similarity of national bank and Reserve Bank powers is evident in a comparison of 12 U.S.C. § 24 with 12 U.S.C. § 341. See Lucas v. Federal Reserve Bank of Richmond, 59 F.2d 617 (4th Cir. 1932). Furthermore, it is evident that Congress did not intend the federal government to have the power to direct the day-to-day operations of the Federal Reserve Banks:

It is proposed that the Government shall retain a sufficient power over the reserve banks to enable it to exercise a directing authority when necessary to do so, but that it shall in no way attempt to carry on through its own mechanism the routine operations and banking which require detailed knowledge of local and individual credit and which determine the actual use of the funds of the community in any given instance. In other words, the reserve-bank plan retains to the Government power over the exercise of the broader banking functions, while it leaves to individuals and privately owned institutions the actual direction of routine.

House Report 18–19.

Congress structured the Reserve Banks as corporate entities, owned by commercial banks, "under the [direction and] supervision and control" of their own boards of directors and subject only to "general supervision" by the Federal Reserve Board. 12 U.S.C. §§ 301, 248(j).

Using the Federal Tort Claims Act (FTCA) as an example, the FRBSL lacks the indicia of close relationships with the United States that have traditionally led the courts to find agency status for other entities.

 The test for determining whether an entity is a federal agency and whether its employees are "employees of the government" for purposes of the FTCA is whether the federal government has the power "to

control the detailed physical performance" of the day-to-day operations of that entity. *United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976); *Logue v. United States*, 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973). Other factors which have been considered illustrative in determination of federal agency status are the entity's independent corporate status, *Pearl v. United States*, 230 F.2d 243 (10th Cir. 1956); *Wickman v. Inland Waterways Corp.*, 78 F.Supp. 284 (D.Minn.1948); the entity's purpose and function. *Pearl v. United States, supra; Goddard v. District of Columbia Redevelopment Land Agency*, 287 F.2d 343 (D.C. Cir. 1961), *cert. denied*, 366 U.S. 910, 81 S.Ct. 1085, 6 L.Ed.2d 235 (1961); and federal involvement in the entity's finances, *Goddard v. District of Columbia Redevelopment Land Agency, supra; Freeling v. Federal Deposit Insurance Corp.*, 221 F.Supp. 955 (W.D.Okl.1962), *aff'd per curiam*, 326 F.2d 971 (10th Cir. 1963); *Handley v. Tecon Corp.*, 172 F.Supp. 565 (N.D.N.Y.1959).

Each Reserve Bank is a "separate body corporate," all of the stock of which is owned, not by the United States, but by the private commercial banks within the Reserve Bank's district that are members of the Federal Reserve System. 12 U.S.C. §§ 341, 282, 323; Roos deposition, pp. 4–5. Each Reserve Bank is under the supervision and control of its board of directors. 12 U.S.C. § 301. Two-thirds of the nine-member board of directors of each Reserve Bank are chosen by the stock-holding commercial banks. 12 U.S.C. §§ 302, 304. The remaining three directors are appointed by the Board; but these directors are not employees of the Board or of the United States. 12 U.S.C. §§ 302, 305. The board of directors of each Reserve Bank is empowered to prescribe by-laws regulating the business of the bank and to exercise all powers conferred by statute and incidental powers. 12 U.S.C. § 341. In addition, the Reserve Banks are authorized to appoint their officials and hire their own employees. The real property held by, and the buildings occupied by, the Reserve Banks are owned by the various Reserve Banks, not by the

Board or the United States. (Breen deposition, p. 27). Each Reserve Bank may sue and be sued in its own name in any court of law or equity. 12 U.S.C. § 341. Claims based on the alleged negligence of Reserve Bank employees have been processed by the Reserve Banks themselves, and lawsuits based on such claims have traditionally been brought against the Reserve Banks. Cf. *Huntington Towers, Ltd. v. Franklin National Bank*, 559 F.2d 863 (2d Cir. 1977), *cert. denied*, 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978); *Kalopodes v. Federal Reserve Bank of Richmond*, 367 F.2d 47 (4th Cir. 1966); *Banco de Espana v. Federal Reserve Bank of New York*, 114 F.2d 438 (2d Cir. 1948).

The employees of the FRBSL do not participate in the Civil Service Retirement system (Britt deposition, p. 43); while traveling on FRBSL business, the employees are not subject to federal travel regulations (Britt deposition, p. 38); they do not typically receive a government employee discount when procuring lodging and services (Britt deposition, p. 39); FRBSL employees are covered by workmen's compensation insurance purchased by the FRBSL rather than by the Federal Employees Compensation Act which covers most civilian federal employees (Britt deposition, p. 17).

The FRBSL carries its own liability insurance (Britt deposition, p. 18), and pays real estate taxes on its holdings (Britt deposition, p. 19; 12 U.S.C. § 531); and, despite its assertion that, as a government agency, it is exempt from all "fees" or "assessments," it pays state licensing and motor vehicle fees on the vehicles it owns (Britt deposition, p. 40). The FRBSL's correspondence is not mailed in government envelopes (Britt deposition, p. 43); litigation involving the FRBSL is handled through private counsel, rather than government attorneys, when outside assistance is needed (Britt deposition, p. 37).

Further, the Board has the authority to exercise general supervision over the Reserve Banks, such as the FRBSL, 12 U.S.C. § 248(j), like that of the federal supervisory agencies over commercial banks. For ex-

ample, under the Bank Protection Act of 1968, 12 U.S.C. §§ 1881–1884, the Federal Reserve Board is the federal supervisory authority with respect to Federal Reserve and state member banks.

The Reserve Banks were established to function, and do function, primarily to serve the business and financial community and the member banks which hold all the stock. As the House Report regarding the original Federal Reserve legislation stated:

> The Federal reserve banks suggested by the committee as just indicated would be in effect cooperative institutions, carried on for the benefit of the community and of the banks themselves by the banks acting as stockholders therein.

H.R.Rep.No. 69, 63d Cong., 1st Sess.

As privately owned corporations, the Reserve Banks receive no appropriated funds from Congress. The Reserve Banks derive their funds from their holdings of securities and interest received from credit extended to member banks. Each Reserve Bank pays its stockholding member banks a statutory dividend of six per cent (after provisions for the expenses of the respective Reserve Bank). 12 U.S.C. § 289. The remaining earnings are then paid into the Reserve Bank's surplus account. *Id.*

The legislative framework designed by Congress, as described *supra*, demonstrates that the Reserve Banks are essentially "bankers' banks," private in character, conducted under the supervision of a board of directors (12 U.S.C. § 301), are not federal agencies and do not act primarily as instrumentalities of the United States.

Based on statutory construction, function and legislative purpose, the Reserve Banks have generally been considered to be independent of the federal government. In short, the FRBSL's status as an agency or instrumentality of the federal government is, at most, tangential. It is an independent, United States corporation.

Therefore, referring back to the question of whether the FRBSL could have waived its objections to the assessment by Metrocentre, by virtue of its failure to comply with *Ark.Stat.Ann.* § 20–416 (Repl. 1968), it is apparent that the FRBSL, not being an instrumentality of the government, may, by not meeting the limitation requirement of that statute, waive its right to contest the assessment even absent the consent of Congress. The FRBSL's failure to contest the assessment at the appropriate time operated as a waiver of its right to object. The FRBSL was aware of the nature and purpose of the proposed Metrocentre Improvement District and, presumably, the ramifications thereof, *i. e.*, that it would be assessed. The FRBSL even expressed its support for the formation of the improvement district in a resolution by its board of directors (Exhibit to Joint Stipulation). It certainly declined to act to avoid the assessment with knowledge that it was to be assessed and thereby knowingly failed to comply with the limits imposed by § 20–416.

Nonetheless, even if the FRBSL had acted within the time allotted by § 20–416, it would still not be immune from the assessment based on its exemption granted in 12 U.S.C. § 531.

In *Bd. of Directors of Red River Levee Dist. No. 1 of Lafayette County, Ark. v. Reconstruction Finance Corp., supra* ("Red River"), the Eighth Circuit held that an "assessment" for benefits conferred by an improvement district similar to Metrocentre was not "taxation" under the Reconstruction Finance Corporation Act that subjected real property to local "taxation." That court, relying in the United States Supreme Court case of *Reconstruction Finance Corp. v. Beaver County,* 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172 (1946), stated that a term in the Act such as "taxation" which was not defined must be determined by state law. Applying Arkansas law, another United States Supreme Court case and a noted treatise, the Eighth Circuit held that an assessment for an improvement is not a tax. The Court stated:

> Thus it is manifest that an assessment to procure funds to pay for a local improvement is a contribution exacted from the owner of property within the improve-

ment district for benefits resulting from the particular improvement, no matter how measured, and not a tax within the meaning of that term as used in Federal statutes. 170 F.2d at 433.

In *Red River, supra,* the defendant Reconstruction Finance Corporation was, without question, an instrumentality of the federal government, and the Eighth Circuit held that such assessments could not be made without the consent of Congress, saying:

> It is familiar law that a State has no power to tax the property of the United States or any of its instrumentalities within its limits without the consent of Congress whether such tax be strictly for state purposes or for local and special projects.

170 F.2d at 431.

Since the FRBSL is not an instrumentality of the federal government, this "familiar law" is not applicable.

Further, despite the holding of the Court in *Red River, supra,* the opinion reads more like an argument in favor of the levying of the assessment against even an instrumentality of the government:

> The Supreme Court of the United States discussed the distinction [between taxes and special assessments] at length in *Illinois Central Railroad v. Decatur,* 147 U.S. 190, 13 S.Ct. 293, 37 L.Ed. 132, where it was held that an exemption of the railroad company from taxation is to be construed as an exemption from the burden of ordinary taxes and not from special assessments for a local improvement. The Court concluded: "And whether the charges are called 'special taxes' or 'special assessments,' and by whatever tribunal or by whatever mode the question of benefits may be determined, the fact remains that the charges are for a local improvement, and cast upon the contiguous property, upon the assumption that it has received a benefit from such improvement, which benefit justifies the charge. The charges here are not taxes proper, are not contributions to the state or to the city for the

purpose of enabling either to carry on its general administration of affairs, but are charges only, and specially, for the cost for a local improvement supposed to have resulted in an enhancement of the value of the railroad company's property. It is not in lieu of such charges that the company pays annually the stipulated per cent of its gross revenues into the state treasury.

Id. at 432, 433.

The distinction, therefore, which the defendant Metrocentre would make between taxes and assessments such as the assessment herein is well made. The Supreme Court of the United States in *Illinois Central v. Decatur,* 147 U.S. 190, 196, 13 S.Ct. 293, 294, 37 L.Ed. 132 (1893), viewed the distinction as being of controlling importance. The Court stated:

> Special assessments are a peculiar species of taxation, standing apart from the general burdens imposed for state and municipal purposes and governed by principles that do not apply generally. The general levy of taxes is understood to exact contributions in return for the general benefits of government, and it promises nothing to the persons taxed beyond what may be anticipated from an administration of the laws for individual protection and the general public good. Special assessments, on the other hand, are made upon the assumption that a portion of the community is to be specially and peculiarly benefited, in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds; and in addition to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the persons receiving it. The justice of demanding the special contribution is supposed to be evident in the fact that the persons who are to make it, while they are made to bear the cost of a public work, are at the same time to suffer no pecuniary loss thereby, their property being increased in value by the expenditure to an amount at least equal to the sums they are required

to pay. This is the idea that underlies all these levies. As in the case of all other taxation, it may sometimes happen that the expenditure will fail to realize the expectation on which the levy is made; and it may thus appear that a special assessment has been laid when justice would have required the levy of a general tax; but the liability of a principle to erroneous or defective application cannot demonstrate the unsoundness of the principle itself, and that which supports special assessments is believed to be firmly based in reason and justice.

The Federal Reserve Bank of St. Louis is not an agency or instrumentality of the federal government for the purpose of the special assessment imposed by the Metrocentre Improvement District No. 1, and the exemption from taxes granted the FRBSL by 12 U.S.C. § 531 " . . . is to be taken as an exemption simply from the burden of ordinary taxes, taxes proper, and does not relieve from the obligation to pay special assessments." 147 U.S. at 199, 13 S.Ct. at 294.